## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 15-po-5065** |
| **v.** | * | |
| | * | |
| | * | |
| **LUCY A. SUGIYAMA,** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | *********** | |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on Defendant's Motion to Dismiss Criminal Refusal Count (the "Motion") (ECF No. 11), which the Government opposed (ECF No. 12). No hearing is required. L.R. 105.6. Defendant's Motion is **DENIED**, for the reasons set forth below.

## BACKGROUND

The following factual summary is derived from the Government's Response to Defendant's Motion. ECF No. 12. At about 5:00 p.m. on March 26, 2015, Officer Cameron Easter of the United States Park Police observed Defendant's vehicle crash off the Baltimore-Washington Parkway, which is in the special maritime and territorial jurisdiction of the United States. Upon assisting Defendant, Officer Easter observed that Defendant appeared disoriented, so the officer called for paramedics, who transported Defendant to the hospital. At the hospital, Officer Matthew Manning arrived and conducted standardized field sobriety tests on Defendant. A roadside breath test was negative for alcohol. On the basis of Defendant's performance on the field sobriety tests, the officers' observations, and the opinion of the examining physician, the officers believed that Defendant was under the influence of drugs. Defendant was thus read the

provisions of the "36 CFR Chemical Testing Notice"[1] and was asked if she would submit to a blood draw.  Defendant refused, so Officer Easter obtained a telephonic oral warrant under Fed. R. Crim. P. 41(d)(3).  Defendant ultimately was charged with, among other offenses, driving under the influence of alcohol and with a blood alcohol concentration of .08 or higher, and refusing to submit to a chemical test in violation of 36 C.F.R. § 4.23(a)(1), (a)(2), and (c)(2).

## DISCUSSION

Defendant argues that the charge of refusing to submit to a chemical test must be dismissed because the refusal statute (36 C.F.R. § 4.23(c)(2)) is unconstitutional under the Fourth Amendment.  "[I]t violates the Fourth Amendment to criminalize a refusal to consent to a search."  Def.'s Mot. 1, ECF No. 11.

The Court addressed a similar argument raised by the defendant in *United States v. Jones*, No. 8:14-po-8559-TMD (D. Md. June 25, 2015).  As in *Jones*, the provisions of 36 C.F.R. § 4.23 and 18 U.S.C. § 3118 apply to this case.  Title 36 C.F.R. § 4.23 provides:

(a)    Operating or being in actual physical control of a motor vehicle is prohibited while:

   (1)    Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or

   (2)    The alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath.  Provided however, that if State law that applies to operating a motor vehicle while under the influence of alcohol establishes more restrictive limits of alcohol concentration in the operator's blood or breath, those limits supersede the limits specified in this paragraph.

(b)    The provisions of paragraph (a) of this section also apply to an operator who is or has been legally entitled to use alcohol or another drug.

---

[1] The Court discussed the "36 CFR Chemical Testing Notice" in full in *United States v. Jones*, No. 8:14-po-8559-TMD, slip op. at 2-3 (D. Md. June 25, 2015).

(c)    Tests.

(1)    *At the request or direction of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area has violated a provision of paragraph (a) of this section, the operator shall submit to one or more tests of the blood, breath, saliva or urine for the purpose of determining blood alcohol and drug content.*

(2)    *Refusal by an operator to submit to a test is prohibited and proof of refusal may be admissable [sic] in any related judicial proceeding.*

(3)    Any test or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person.

(4)    Any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use.

(d)    Presumptive levels.

(1)    The results of chemical or other quantitative tests are intended to supplement the elements of probable cause used as the basis for the arrest of an operator charged with a violation of paragraph (a)(1) of this section.  If the alcohol concentration in the operator's blood or breath at the time of testing is less than alcohol concentrations specified in paragraph (a)(2) of this section, this fact does not give rise to any presumption that the operator is or is not under the influence of alcohol.

(2)    The provisions of paragraph (d)(1) of this section are not intended to limit the introduction of any other competent evidence bearing upon the question of whether the operator, at the time of the alleged violation, was under the influence of alcohol, or a drug, or drugs, or any combination thereof.

36 C.F.R. § 4.23 (emphasis added).  Section 4.23(c)(2) is a substantive offense.  *United States v. Francisco*, 413 F. App'x 216, 219 (11th Cir. 2011) (per curiam) (citing *United States v. Brown*, 364 F.3d 1266, 1268-69 (11th Cir. 2004)).  Indeed, a person can be charged under § 4.23(c)(2)

3

with refusal and face a penalty of up to 6 months' incarceration and/or a fine of up to $5,000.00.

18 U.S.C. §§ 19, 3559(a)(7), 3571(b)(6); 36 C.F.R. § 1.3(a).

Title 18 U.S.C. § 3118 provides:

> **(a)   Consent.**--*Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.*  The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.
>
> **(b)   Effect of Refusal.**--*Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime and territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused*, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction.  Any person who operates a motor vehicle in the special maritime and territorial jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

18 U.S.C. § 3118 (emphasis added).

Although Defendant's charge of test refusal under § 4.23(c)(2) is based on her refusal to submit to a blood test rather than to a breath test, Defendant contends that, "[s]ince a breath test cannot be compelled in the absence of a warrant, the refusal to submit to a breath test, a search, cannot be made criminal."  Def.'s Mot. 2, ECF No. 11.

> The argument the defendant makes today is that since the Government cannot establish that breath tests fit within an exception to the warrant requirement, that therefore the Government cannot compel submission to a breath test without a warrant, and as a result, that it cannot criminalize the refusal of a defendant to consent to . . . this form of search.

*Id.* at 13.  In so arguing, Defendant maintains that the reasoning of *Missouri v. McNeely*, 133 S.
Ct. 1552 (2013), "must apply to breath tests." *Id.* at 4.

Defendant's reliance on *McNeely* is misplaced, however.  The Supreme Court in *McNeely*
held that, "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream
does not constitute an exigency in every case sufficient to justify conducting a *blood* test without
a warrant." *McNeely*, 133 S. Ct. at 1568 (emphasis added).  Rather, the Court "looks to the
totality of the circumstances" in evaluating exigency.  *Id.* at 1559.  *McNeely* actually runs
contrary to Defendant's argument because the Court stated its support for penalties against
chemical test refusal.  In the Fifth Amendment context, the Court noted that most States allow a
motorist's refusal to be used as evidence against him in a subsequent criminal prosecution.  *Id.* at
1566 (plurality opinion) (citing, *inter alia*, *South Dakota v. Neville*, 459 U.S. 553, 554, 563-64,
103 S. Ct. 916, 917-18, 922-23 (1983)).  The Court also discussed the "broad range of legal
tools" that States have to enforce DUI laws and secure blood alcohol evidence without
undertaking warrantless, nonconsensual blood draws.  *Id.*  The Court recognized that all 50
States have adopted implied-consent laws, which "require motorists, as a condition of operating
a motor vehicle within the State, to consent to [blood alcohol concentration] testing if they are
arrested or otherwise detained on suspicion of a drunk-driving offense." *Id.*  "Such laws impose
significant consequences when a motorist withdraws consent; typically the motorist's driver's
license is immediately suspended or revoked . . . ." *Id.*  *McNeely*, therefore, undermines
Defendant's position that the refusal statute violates the Fourth Amendment.

"[U]nless a statute affects a fundamental right or some protected class, courts generally
accord the legislation a 'strong presumption of validity' by applying a rational basis standard of

review." *Wilkins v. Gaddy*, 734 F.3d 344, 347 (4th Cir. 2013) (quoting *Heller v. Doe*, 509 U.S. 312, 319, 113 S. Ct. 2637, 2642 (1993)).

> The "rational" aspect of rational basis review refers to a constitutionally minimal level of rationality; it is not an invitation to scrutinize either the instrumental rationality of the chosen means (i.e., whether the classification is the best one suited to accomplish the desired result), or the normative rationality of the chosen governmental purpose (i.e., whether the public policy sought to be achieved is preferable to other possible public ends).

*Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 295 (4th Cir. 2007). "Under rational basis review, courts generally uphold governmental decisions that are rationally related to a state interest. This is a deferential standard, placing the burden on [the aggrieved party] 'to negate every conceivable basis which might support' the governmental action." *Stevens v. Holder*, 966 F. Supp. 2d 622, 642 (E.D. Va. 2013) (citation omitted); *see Giarratano v. Johnson*, 521 F.3d 298, 302-03 (4th Cir. 2008).

State courts that have recently considered the constitutionality of state test-refusal statutes similar to those applicable in this case have found them to be reasonable and not coercive. In *State v. Yong Shik Won*, 332 P.3d 661 (Haw. Ct. App. 2014), *cert. granted*, No. SCWC-12-0000858, 2014 WL 2881259 (Haw. June 24, 2014), the Intermediate Court of Appeals of Hawai'i considered the Hawaii test-refusal statute, which provided that refusal of a person suspected of drunk driving to submit to a breath, blood, or urine test is a petty misdemeanor subject to a penalty of up to thirty days' imprisonment and a fine of up to $1,000.00. *Won*, 332 P.3d at 666 (citing Haw. Rev. Stat. §§ 706-663 (1993), 706-640 (Supp. 2013)).

> The court noted that

> the implied consent statute has two components, both of which are reasonable. It is reasonable for the Legislature to condition its grant of the privilege of driving on a person's agreement to submit to breath testing if arrested for [DUI]. It is also reasonable for the Legislature to enforce that bargain by imposing penalties on a driver who refuses to honor his or her agreement.

*Id.* at 681 n.23.   The court concluded that the test-refusal statute did not violate the Fourth Amendment.  *Id.* at 681-82.

In *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *petition for cert. filed* (U.S. June 15, 2015) (No. 14-1470), the defendant was charged with first-degree test refusal when he refused to take a breath test after he was arrested on suspicion of driving while impaired.  The defendant asserted that the Minnesota statute that made it a crime for a driver to refuse a request to take a chemical test to detect the presence of alcohol if certain conditions were met violated his right to due process under the United States and Minnesota Constitutions.  *Bernard*, 859 N.W.2d at 764, 765.  The Supreme Court of Minnesota recognized the threat that impaired drivers pose to public safety and noted the state's compelling interest in highway safety and keeping impaired drivers off the road.  "Securing effective chemical tests to determine whether drivers suspected of being under the influence are in fact driving while impaired is reasonably related to the government's interest in keeping impaired drivers off the road."  *Id.* at 773.  "Encouraging drivers to submit to such tests, through criminalizing their refusal, furthers that interest."  *Id.*  The court held that "the test refusal statute is a reasonable means to a permissive object and that it passes rational basis review."  *Id.* at 774.

The Supreme Court of North Dakota in *State v. Birchfield*, 858 N.W.2d 302 (N.D. 2015), *petition for cert. filed* (U.S. June 12, 2015) (No. 14-1468), held that North Dakota's statute criminalizing a driver's refusal to submit to a chemical test did not violate the driver's right to be free from an unreasonable search or seizure under the Fourth Amendment or the North Dakota Constitution.  *Birchfield*, 858 N.W.2d at 306-10.   Under North Dakota law, a motorist who refuses to submit to a chemical test as directed by a law enforcement officer is criminally

punished in the same manner as DUI.  *Id.* at 304 (citing N.D. Cent. Code § 39-20-01).  The court

in *Birchfield* recognized that

> a state can *constitutionally* use the driver's test refusal (that is, the driver's
> exercise of his Fourth Amendment right not to be tested without consent) as
> inferential evidence *to convict the driver of a crime*, even though the Constitution
> would have prohibited the state from forcing that driver to submit to an actual
> chemical test.

*Id.* at 307 (quoting *State v. Chasingbear*, No. A14-0301, 2014 WL 3802616, at *2 (Minn. Ct.

App. Aug. 4, 2014), *review denied* (Minn. Apr. 14, 2015)).  The court further noted that "the

Constitution does not forbid every government-imposed choice in the criminal process that has

the effect of discouraging the exercise of constitutional rights."  *Id.* at 309 (quoting *Jenkins v.

Anderson*, 447 U.S. 231, 236, 100 S. Ct. 2124, 2128 (1980)) (internal quotation marks omitted).

In finding that North Dakota's criminal refusal statute satisfied the general reasonableness

requirement of the Fourth Amendment, the court recognized that "[c]riminally penalizing test

refusal reduces the likelihood that drunk drivers will avoid a criminal penalty by refusing to take

a test and, therefore, it is reasonable because it is an efficient tool in discouraging drunk driving."

*Id.* at 310 (quoting *Chasingbear*, 2014 WL 3802616, at *12, *13) (internal quotation marks

omitted).  The court affirmed the defendant's conviction for misdemeanor test refusal.  *Id.*; *see

also Beylund v. Levi*, 859 N.W.2d 403, 408-14 (N.D. 2015), *petition for cert. filed* (U.S. June 22,

2015) (No. 14-1507).

Defendant has not cited any case, federal or state, holding that a test-refusal statute is

unconstitutional.  Nonetheless, Defendant maintains that "[t]he problem is that consent to take a

breath test for DUIs investigated under 36 CFR is not voluntary[;] it is coerced when the officer

informs the suspect that taking the test is mandatory, and refusal a criminal act under 36 CFR

§ 4.23."  Def.'s Mot. 8, ECF No. 11.  In this regard, Defendant's reliance on various state cases

from Arizona, Delaware, Idaho, Nevada, South Dakota, and Texas involving warrantless blood draws is unavailing. *State v. Butler*, 302 P.3d 609 (Ariz. 2013); *Flonnory v. State*, 109 A.3d 1060 (Del. 2015); *State v. Halseth*, 339 P.3d 368 (Idaho 2014); *Byars v. State*, 336 P.3d 939 (Nev. 2014); *State v. Fierro*, 853 N.W.2d 235 (S.D. 2014); *State v. Villarreal*, __ S.W.3d __, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), *reh'g granted* (Feb. 25, 2015). For example, in *Flonnory*, after his arrest for suspicion of DUI, the defendant was transported to the police station for a blood draw without his permission or a search warrant. *Flonnory*, 109 A.3d at 1062-63. The trial court denied the defendant's motion to suppress the results of the blood draw because the court had found that he had provided consent under the state's implied-consent statute simply by driving his vehicle. *Id.* at 1063. On appeal, however, the Supreme Court of Delaware first noted that "[a] blood draw is fundamentally different from a breath test because it involves an intrusion into the human body." *Id.* at 1064; *see Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 625, 109 S. Ct. 1402, 1418 (1989) ("Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment. Further, breath tests reveal the level of alcohol in the employee's bloodstream and nothing more."). The court then went on to hold that, because of the invasive nature of a blood draw, "a Fourth Amendment totality of the circumstances analysis must be performed when the search is not based upon a warrant or exigent circumstances in order to determine whether a defendant voluntarily consented to the blood draw." *Flonnory*, 109 A.3d at 1065. The Supreme Court of Delaware ultimately held that the trial court had erred when it concluded that the defendant's statutory implied consent exempted the defendant's blood draw from the Fourth Amendment's warrant requirement. *Id.* The court in *Flonnory* thus remanded the matter for the trial court to determine

whether the defendant expressly or impliedly had consented to the blood draw under the totality of the circumstances. *Id.* at 1066.

In *Halseth*, the Supreme Court of Idaho held that an implied-consent statute did not justify a warrantless blood draw from a driver who refused to consent or objected to the blood draw. *Halseth*, 339 P.3d at 371. The court in *Halseth* affirmed the trial court's granting of the defendant's motion to suppress because the defendant had withdrawn his implied consent by objecting to the blood draw. *Id.* In *Fierro*, moreover, a warrantless blood sample was obtained from the defendant after she verbally and physically refused to provide one to the police after her arrest for DUI. *Fierro*, 853 N.W.2d at 237-38, 242. No exigent circumstances existed. *Id.* at 240-41. The Supreme Court of South Dakota thus held that, under the totality of the circumstances, the defendant had not consented to the blood draw. *Id.* at 242. The court also declined to recognize that South Dakota's implied-consent statute was an exception to the Fourth Amendment's warrant requirement. *Id.* at 243 (citing S.D. Codified Laws § 32-23-10).

In *Villarreal*, the defendant, who was charged with driving while intoxicated ("DWI") and who had been convicted at least twice previously of DWI, refused to provide to the police a blood sample under the state's implied-consent and mandatory-blood-draw statutes. The trial court granted the defendant's motion to suppress the results of his blood test, concluding that the defendant's blood was illegally obtained without a warrant and in the absence of a recognized exception to the warrant requirement. *Villarreal*, 2014 WL 6734178, at *4. The state filed an interlocutory appeal to the court of appeals, which affirmed the trial court. *Id.* at *4-6. After granting the state's petition for discretionary review, the Court of Criminal Appeals of Texas held that a warrantless, nonconsensual drawing of blood from a DWI suspect under the state's implied-consent and mandatory-blood-draw statutes violated the Fourth Amendment because

such blood testing did not categorically fall within any exception to the Fourth Amendment's warrant requirement and was not reasonable under a Fourth Amendment balancing test. *Id.* at *1, *21. The court noted that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *Id.* at *11; *see id.* at *13 (noting that courts in other jurisdictions have concluded that their state "statutes that aim to establish irrevocable implied consent . . . , when used to draw a suspect's blood without a warrant and over his objection, do not establish valid legal consent within the bounds of the Fourth Amendment" (citing cases)). In addition to holding that a warrantless search of a DWI suspect's blood did not fall within the automobile, special-needs, or search-incident-to-arrest exceptions to the Fourth Amendment, the court held that such a search was not reasonable under a Fourth Amendment balancing test because a warrantless search is unreasonable unless it falls within an established exception to the warrant requirement. *Id.* at *14-20.

In *Byars*, a Nevada Highway Patrol trooper stopped the defendant for speeding and, suspecting that he was under the influence of a controlled substance after conducting field sobriety tests, arrested him. *Byars*, 336 P.3d at 942. After discovering a handgun in the defendant's vehicle during an inventory search, the trooper read Nevada's implied-consent law to the defendant and informed the defendant that he would conduct a blood test. *Id.* The defendant refused to submit to the test, but cooperated with the trooper until they reached the hospital and the blood draw was actually performed. *Id.* The defendant struggled and struck the trooper and a sheriff's deputy during the blood draw, which eventually showed evidence of marijuana in the defendant's system. *Id.* The defendant ultimately was convicted of driving under the influence of a controlled substance, among other offenses. *Id.* at 942-43. The

defendant appealed, contending, among other things, that his warrantless blood draw violated the Fourth Amendment. *Id.* at 943.

Nevada's implied-consent statute at the time of the defendant's arrest allowed a police officer to use reasonable force to obtain a blood sample upon a driver's refusal to submit to a chemical test. *Id.* at 945 (citing Nev. Rev. Stat. § 484C.160(7)).  The court in *Byars* held that the statute was unconstitutional because it permitted police to use force to obtain a blood sample from a motorist rather than give him a choice of submitting to a test or facing a penalty. *Id.* at 945-46.  Because the statute did not allow a driver to withdraw or revoke his "implied consent," the court held that the statute was unconstitutional but that the trooper obtained the evidence in good faith, so its suppression was not required. *Id.* at 946-47.

Finally, in *Butler*, a sixteen-year-old juvenile and two of his friends arrived late to school.  A school monitor smelled marijuana on the boys and also saw drug paraphernalia in the juvenile's car.  The boys were detained in separate rooms, and the sheriff's office was contacted. *Butler*, 302 P.3d at 611.

A deputy sheriff arrived and read *Miranda* warnings to the juvenile.  In the presence of several school officials, the juvenile admitted that he had driven his car to school after smoking marijuana and that he owned some of the drug paraphernalia in the car.  The deputy informed the juvenile that he was under arrest for DUI and other offenses.  The juvenile became agitated, and the deputy handcuffed him.  While retrieving a phlebotomy kit to do a blood draw, the deputy left the juvenile with the assistant principal. *Id.*  Upon his return to the room, the deputy removed the juvenile's handcuffs because he had calmed down and read him an "implied consent admonition" twice, first verbatim and then in "plain English," which provided as follows:

> Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance as chosen by the law enforcement officer to

determine alcohol concentration or drug content.  The law enforcement officer may require you to submit to two or more tests.  You are required to successfully complete each of the tests.

If the test results are not available . . . or indicate any drug defined in ARS 13–3401 or its metabolite, without a valid prescription, your Arizona driving privilege will be suspended for not less than 90 consecutive days.

If you refuse to submit or do not successfully complete the specified tests, your Arizona driving privilege will be suspended for 12 months, or for two years if there is a prior implied consent refusal, within the last 84 months, on your record. *You are, therefore, required to submit to the specified tests*.

*Id.* (alteration in original) (emphasis added).  The juvenile agreed verbally and in writing to have his blood drawn, and the deputy drew two vials of the juvenile's blood.  The State charged the juvenile with DUI.  The juvenile moved to suppress evidence of the blood draw, arguing that his consent had not been voluntary but that, as a minor, he lacked the legal capacity to consent.

The Supreme Court of Arizona held that a compelled blood draw, even when administered pursuant to Arizona's implied-consent statute, is a search subject to the Fourth Amendment's constraints.  *Id.* at 612 (citing *McNeely*, 133 S. Ct. at 1556).  Accordingly, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw.  *Id.*  The court considered the totality of the circumstances in that case, including the juvenile defendant's age and intelligence and the length of detention, before affirming the lower court's determination that the defendant's consent was involuntary.  *Id.* at 613-14.  The court did not hold, however, that Arizona's implied-consent statute was *per se* unduly coercive.  *See Bales v. Dupnik*, No. CV 12-00483-TUC-BPV, 2014 WL 1794277, at *8 (D. Ariz. May 6, 2014) ("Petitioner points to no clearly established Supreme Court precedent which holds that the threat exerted by Arizona's or any other state's, implied consent law is *per se* unduly coercive."), *appeal filed*, No. 14-16067 (9th Cir. June 2, 2014).

Moreover, as the California Court of Appeal recently noted regarding California's implied-consent law in a case involving a warrantless blood draw, "the concept of 'implied consent' in this context is confusing and somewhat unhelpful in determining whether a motorist['s] voluntary submission to a chemical test constitutes valid Fourth Amendment consent." *People v. Harris*, 184 Cal. Rptr. 3d 198, 210 (Ct. App. 2015), *review denied* (June 10, 2015). "[A]ctual consent to a blood draw is not 'implied consent,' but rather a possible result of requiring the driver to choose whether to consent under the implied consent law." *Id.* (quoting *State v. Padley*, 849 N.W.2d 867, 876 (Wis. Ct. App.), *review denied*, 855 N.W.2d 695 (Wis. 2014)). The court noted that the "implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give *actual* consent to a blood draw when put to the choice between consent or automatic sanctions." *Id.* (quoting *Padley*, 849 N.W.2d at 879). "Framed in the terms of 'implied consent,' choosing the 'yes' option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the 'no' option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent." *Id.* (quoting same). "Withdrawing consent by choosing the 'no' option is an unlawful action, in that it is penalized by 'refusal violation' sanctions, even though it is a choice the driver can make." *Padley*, 849 N.W.2d at 879. Thus, rather than determine whether "implied consent" to a chemical test satisfies the Fourth Amendment, the California Court of Appeal held that "a motorist's submission to a chemical test, if freely and voluntarily given, is actual consent under the Fourth Amendment." *Harris*, 184 Cal. Rptr. 3d at 212-13.

In so holding, the court in *Harris* found that "[t]he fact that a motorist is told he will face serious consequences if he refuses to submit to a blood test does not, in itself, mean that his

submission was coerced." *Id.* at 211. "That the motorist is forced to choose between submitting to the chemical test and facing serious consequences for refusing to submit, pursuant to the implied consent law, does not in itself render the motorist's submission to be coerced or otherwise invalid for purposes of the Fourth Amendment." *Id.* at 213; *accord State v. Brooks*, 838 N.W.2d 563, 570-71 (Minn. 2013) ("[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test. . . . Although refusing the test comes with criminal penalties in Minnesota, the Supreme Court has made clear that while the choice to submit or refuse to take a chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" (footnote omitted) (quoting *Neville*, 459 U.S. at 564, 103 S. Ct. at 923)), *cert. denied*, 134 S. Ct. 1799 (2014); *Birchfield*, 858 N.W.2d at 306 ("Since the *McNeely* decision, we have held that consent to a chemical test is not coerced and is not rendered involuntary merely by a law enforcement officer's reading of the implied consent advisory that accurately informs the arrestee of the consequences for refusal, including the administrative and criminal penalties, and presents the arrestee with a choice."); *State v. Moore*, 318 P.3d 1133, 1138 (Or. 2013) ("[A]ccurately advising a defendant of a lawful penalty that could be imposed may well play a role in the defendant's decision to engage in the particular behavior, but that does not mean that the defendant's decision was 'involuntary.'"), *modified per curiam*, 322 P.3d 486 (Or. 2014). The court in *Harris* ultimately found that the defendant's submission was freely and voluntarily given under the totality of the circumstances. *Harris*, 184 Cal. Rptr. 3d at 215.

The cases cited by Defendant and discussed above do not directly address the issue before the Court—whether or not the test-refusal statute violates the Fourth Amendment. Rather, they merely restate established Fourth Amendment law—that consent to a Fourth

Amendment search must be free and voluntary (and not coercive) under the totality of the circumstances. Consent is not coerced (and thus rendered involuntary) simply because the State has attached criminal penalties for refusing to provide consent. The existence of criminal penalties for test refusal is just one factor to be considered when analyzing the totality of the circumstances, but it alone does not determine the issue. Thus, Defendant's assertion that a defendant's consent is coerced when he is informed of the criminal consequences of refusing chemical testing thus is unavailing. *See United States v. Muir*, No. 8:13-MJ-03005-TMD, 2015 WL 2165570, at *4-10 (D. Md. May 7, 2015) (finding DUI defendant's consent to breath test to be voluntary and not coerced despite being advised of consequences of refusal under 36 C.F.R. § 4.23(c)(2) and 18 U.S.C. § 3118).

The Court concludes that the test-refusal statute applicable in this case passes rational basis review. "No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. Media reports of alcohol-related death and mutilation on the Nation's roads are legion." *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451, 110 S. Ct. 2481, 2485 (1990). Thus, "the sanction for refusal serves multiple purposes: 1) to serve as a deterrent to drunken driving; 2) as a strong inducement to take the test; and 3) to promptly remove drunk drivers from the road, which contributes to public safety." *Beylund*, 859 N.W.2d at 413 (citing *Mackey v. Montrym*, 443 U.S. 1, 18, 99 S. Ct. 2612, 2621 (1979)). For these reasons, "[s]ecuring effective chemical tests to determine whether drivers suspected of being under the influence are in fact driving while impaired is reasonably related to the government's interest in keeping impaired drivers off the road." *Bernard*, 859 N.W.2d at 773. "Encouraging drivers to submit to such tests, through criminalizing their refusal, furthers that interest." *Id.*; *see Chasingbear*, 2014 WL 3802616, at *7 ("The statutory condition that every arrested, apparently

drunk, driver agrees to submit to a chemical test or be penalized for refusing the test directly and *only* furthers the state's interest in the sober use of public highways.").    Further, criminally penalizing test refusal does not violate a person's substantive due process rights because a suspected drunk driver's right to refuse alcohol testing is not a fundamental right. *Chasingbear*, 2014 WL 3802616, at *8-14; *see Neville*, 459 U.S. at 565, 103 S. Ct. at 923 ("Respondent's right to refuse the blood-alcohol test, by contrast, is simply a matter of grace bestowed by the South Dakota legislature."); *Bernard*, 859 N.W.2d at 773 ("Having decided that the search of [the defendant's] breath would have been constitutional, we find no fundamental right at issue here, as [the defendant] does not have a fundamental right to refuse a constitutional search."). Although a driver has a constitutional right not to be tested without a warrant or a valid warrant exception, he does not have a constitutional right to refuse to be tested or to avoid prosecution for that refusal.  *See Neville*, 459 U.S. at 560 n.10, 103 S. Ct. at 921 n.10 ("[A] person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test."); *Chasingbear*, 2014 WL 3802616, at *8 ("[D]espite a driver's having the constitutional right not *to be tested* without a warrant or a valid warrant exception, suspected drunk drivers have no constitutional right *to refuse* to be tested or to avoid prosecution for that refusal.").

In short, Defendant has neither the statutory nor the constitutional right to refuse testing without penalty.  *See Chasingbear*, 2014 WL 3802616, at *6.  Because 36 C.F.R. § 4.23(c)(2) and 18 U.S.C. § 3118 do not violate the Fourth Amendment, Defendant's Motion (ECF No. 11) is **DENIED**.


Date: July 6, 2015                              _____/s/_____
                                                Thomas M. DiGirolamo
                                                United States Magistrate Judge